# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

CAROL LEONARD

      Plaintiff,

vs.                                        CASE NO: 2:08-cv-871-FtM-29SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court on the Plaintiff, Carol Leonard's, Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on November 24, 2008, in the Middle District of Florida, Fort Myers Division. The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #14) on June 8, 2009. The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. #19) on July 7, 2009. Thus, the Motion is ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for a period of disability and disability insurance benefits on June 5, 1992. (Tr. 17, 305, 585). The claim was denied initially and upon reconsideration. After a hearing on July 29, 1997, an administrative law judge (ALJ) issued a hearing decision denying Plaintiff's claim on November 10, 1997, finding the Plaintiff could perform her past relevant work as a telemarketer. (Tr. 17, 285, 290, 582, 585, 596-97 finding 6; Tr. 604). The Appeals Council denied Plaintiff's request for review, and the Plaintiff did not further appeal the ALJ's November 10, 1997, decision, making it final and binding through the date of the ALJ's decision. (Tr. 636). 20 C.F.R. §§ 404.955, 404.981, 404.987, 422.210(a) (2006).

The Plaintiff filed her current application for a period of disability and disability insurance benefits in February 2002, alleging she became unable to work on November 11, 1997. (Tr. 59). As noted in the ALJ's decision, Plaintiff's Counsel explained that this was done to avoid any issue of res judicata in light of the prior Judge's decision of November 10, 1997. (Tr. 18). The ALJ determined that the issue at this point was whether the Plaintiff was disabled from November 11, 1997 through December 31, 1997 (Relevant Period). (Tr. 18). After being denied initially and upon reconsideration, the Plaintiff requested a hearing which was held on April 7, 2004, before ALJ Joseph G. Dail, Jr. (Tr. 50, 54, 550). On July 28, 2004, the ALJ issued a hearing decision denying Plaintiff's claim. (Tr. 14). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 6). 20 C.F.R. §§ 404.955, 404.981, 422.210(a). The Appeals Council denied the Plaintiff's Request for Review, and the Plaintiff filed a civil action in this Court. On February 14, 2007, United States Magistrate Judge Sheri Polster Chappell issued a report and recommendation that the Commissioner's Decision be affirmed. (Tr.

68E, 684). On March 30, 2007, the United States District Judge Marcia Morales Howard adopted in part and rejected in part the recommendation and remanded the Plaintiff's claim back to the Commissioner for further proceedings consistent with the Order of the Court. (Tr. 656-58).

After the remand, ALJ F. H. Ayer held a hearing on January 23, 2008. (Tr. 648E, 838). On July 7, 2008, ALJ Ayer issued a decision finding the Plaintiff could perform her past relevant work as a telemarketer and was not disabled through her date last insured of December 31, 1997. (Tr. 648A-48J). The Appeals Council found no reason to assume jurisdiction, and the Plaintiff filed her current action in this Court. The Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g).

## *Plaintiff's History*

The Plaintiff was born November 1, 1954, making her forty-nine (49) years old at the time of the hearing. (Tr. 18, 54). The Plaintiff has a high school education and a past relevant work history as a telemarketer and retail clerk. (Tr. 18). The Plaintiff alleges an onset disability date of November 11, 1997, due to rheumatoid arthritis in her hands and knees and degenerative disc disease. (Tr. 18).

## *Medical History*

The medical records show that in October 1988, the Plaintiff saw Dr. Gerald Wrobel for injuries sustained as a result of sitting in a broken chair at work. (Tr. 20, 549). The Plaintiff reported persistent headaches, left neck, shoulder, arm and back pain, as well as bilateral leg pain. (Tr. 20). X-rays of the cervical spine were taken and were within normal limits. (Tr. 549). Physical examination revealed decreased range of motion of lumbar spine with moderate paravertebral muscle spasm. (Tr. 549). Straight leg raise was negative bilaterally. (Tr. 549). A neurologic examination of the upper and lower extremities was within normal limits. (Tr. 549). Dr. Wrobel

opined that Plaintiff had both a lumbar and cervical strain. (Tr. 549). The Plaintiff was treated with physical therapy and medication. (Tr. 549).

On March 22, 1989, Dr. Newland's treatment notes reflect the Plaintiff had returned to work but on her first day back, she began to experience an acute flare-up of lumbar pain which lasted for two (2) hours. (Tr. 20). The Plaintiff was treated with an injection of Decadron and Xylocaine which produced immediate relief from her symptoms. (Tr. 20). The treatment records from April 1989, revealed that the Plaintiff lasted only two and one half hours on the job and that she had not returned to work. (Tr. 20). The treatment notes also showed that the Plaintiff continued to have myofascial rippling spasms and intermittent facette cracking and popping in her neck. (Tr. 20, 125).

In February 1991, the Plaintiff developed a "rheumatoid nodule" on her right elbow. (Tr. 20). On February 28, 1991, the Plaintiff underwent a procedure in which the mass was excised from the elbow. (Tr. 116).

The Plaintiff did not return to Dr. Newland until June 6, 1994. (Tr. 387). The Plaintiff returned to re-establish medical direction. (Tr. 387). Dr. Newland noted the Plaintiff was receiving treatment from another physician who had accused her of having more mental than physical problems. (Tr. 20, 387). The Plaintiff was also noted to be receiving treatment from Dr. Kenneth Piotrowski. (Tr. 20, 387). The Plaintiff's chief complaints involved the left lower dorsal para midline region, cervicoscapular discomfort and intermittent parasthesias and numbness running into the hands bilaterally. (Tr. 387). Upon re-examination, Dr. Newland noted the Plaintiff's increased weight and blood pressure. Dr. Newland also noted that there were palpable myofascial trigger points over both trapezii, which were tender. (Tr. 387). There was moderate tenderness in the left scalene region, milder on the right. (Tr. 387). There was tightness and tenderness along the left lumbar dorsal erector spinae, and vague tenderness over the left buttock and iliotibial band region.

(Tr. 387). Dr. Newland opined that it would be premature in diagnosing the Plaintiff as it was an ongoing problem since 1990, and followed a "characteristic pattern". (Tr. 388). Dr. Newland explained to the Plaintiff that the best long term benefits would occur with stretching, strengthening, and building up endurance of the myofascial structures. (Tr. 21, 387-388).

During the time period of July 14, 1994, through November 26, 1996, the Plaintiff was treated by Dr. Y. Memon, a neurosurgeon. (Tr. 21). The Plaintiff reported on July 14, 1994, that she had a history of low back and neck injury. (Tr. 21, 468). The Plaintiff reported that her neck pain has improved but her low back pain continued to get worse. (Tr. 468). Upon examination, the systemic exam was normal. (Tr. 468). Neurologically, the Plaintiff was intact except for limitation of cervical spine movements of minimal degree. (Tr. 468). Examination of the lumbosacral spine revealed a moderate degree of limitation with tenderness in the paraveretebral area. (Tr. 468). The physician noted the Plaintiff had been using a TENS unit and had been prescribed the medications Pamelor and Klonopin. (Tr. 21). Dr. Memon reported no other neurological findings in the Plaintiff's upper extremities. (Tr. 468). Dr. Memon prescribed a course of physical therapy treatment. (Tr. 468). Progress notes show that the Plaintiff reported physical therapy sessions were not helping very much, and her symptoms actually worsened. (Tr. 459). An MRI was requested and revealed desiccation and mild bulging of the L5 disc. (Tr. 445). No focal herniation was noted nor any significant spinal stenosis. (Tr. 445). Dr. Memon further noted that the Plaintiff should continue to exercise at home and perhaps return to work. (Tr. 445).

On August 2, 1996, Dr. Memon reported the Plaintiff had a moderate degree of loss of motion in the lumbar spine and mild to moderate degree of muscle spasm in the lumbar spine; however, he further noted that there were no objective neurological findings during physical examination. (Tr. 22). The Plaintiff's grip strength and fine dexterity were reported as normal as

well as her gait and station. (Tr. 444). The Plaintiff was further reported to have the ability to squat, walk on her toes, and heels, and she did not require an assistive device for ambulation. (Tr. 22, 444).

On November 26, 1996, Dr. Memon completed a Medical Assessment of Ability to Do Work Related Activities. (Tr. 443). Dr. Memon opined that Plaintiff had the ability to stand/walk for two (2) hours during an eight (8) hour workday, and sit for two (2) hours during an eight (8) hour day. (Tr. 443). Dr. Memon further opined the Plaintiff had the ability to sit, stand, or walk for a total of four (4) hours during an eight (8) hour work day (Tr. 443).

On August 29, 1996, the Plaintiff was evaluated by a State Agency medical disability expert. (Tr. 489-505). The disability expert concluded that the Plaintiff could perform a restricted range of light work. (Tr. 498-505).

On November 11, 1996, the Plaintiff underwent a consultative examination with Dr. Yoel Drucker at the request of the State Agency. (Tr. 506-510). Dr. Drucker noted that Plaintiff developed rheumatoid arthritis about seven (7) to eight (8) years ago and that this was manifested by diffuse aches and pain, and arthritis that involved her upper and lower extremities. (Tr. 506). Dr. Drucker reported that Plaintiff had been treated with non-steroidals and had never been treated with disease modifying agents. (Tr. 506). The Plaintiff's chief complaints included pain in the ankle, hands, wrists, shoulders and has morning stiffness for approximately one (1) to two (2) hours. (Tr. 506). Physical examination revealed mild swelling of the Plaintiff's right ankle and no evidence of joint effusion in her knees. (Tr. 506). The Plaintiff had normal range of motion of both hips. (Tr. 506). The Plaintiff exhibited decreased grip strength to thirty (30) percent of normal on her right side and fifty (50) percent of normal on her left side. (Tr. 507). The Plaintiff was noted to have mild synovitis of her second left PIP and second through fourth MCP's bilaterally, and this was noted to be worse on the left side. (Tr. 22, 507). Examination of the Plaintiff's elbow was

unremarkable and showed only mild pain on extreme flexion and extension in her wrists. (Tr. 22, 507). The Plaintiff's straight leg raising was negative bilaterally. (Tr. 22, 507). The Plaintiff demonstrated tenderness over the lumbosacral spine and the paraspinal muscles in that area, however, the Plaintiff's gait was normal. (Tr. 22, 507). Dr. Drucker opined that it would be difficult for the Plaintiff to work due to her arthritis but that improvement was possible if she was treated appropriately. (Tr. 22, 508).

*Psychological Evaluations*

On February 22, 1994, the Plaintiff presented to Dr. Kenneth Pitrowski for a psychiatric evaluation with permission to start treatment. (Tr. 429). The Plaintiff was described as angry and agitated. (Tr. 21, 430). The Plaintiff's intellectual functioning was above average with an estimated full scale IQ of approximately 119. (Tr. 440). The Beck Inventory revealed the Plaintiff to have severe depression. (Tr. 21, 440). The results of the Plaintiff's MMPI suggested significant problems. (Tr. 440). The Plaintiff returned for a second clinical interview on March 2, 1994. (Tr. 440). The mental status exam was similar to her last visit. (Tr. 441). The Plaintiff was more agitated and Dr. Piotrowski was unable to calm her down. (Tr. 441). Dr. Piotrowski noted the Plaintiff looked more like agitated depression than anxiety disorder, although there were still some symptoms suggestive of anxiety or panic attacks. (Tr. 441-442). The plan was to start Soma 350mg. (Tr. 442).

On March 8, 1994, the Plaintiff presented to Dr. Piotrowski for a session. (Tr. 426). The Plaintiff stated she took Prozac for about a week but discontinued use due to the drug's bad publicity. (Tr. 426). The plan was to continue Soma 350 mg, start Klonopin .5 mg, Imipramine 10mg and to begin telephone conferences because of its cost effectiveness. (Tr. 426). On March 22, 1994, the Plaintiff reported that her sleep disturbances were less than before. (Tr. 423). The Plaintiff

stated that she developed uncomfortable dreams every night. (Tr. 423). Dr. Piotrowksi adjusted the Plaintiff's medication. (Tr. 423).

On April 4, 1994, the Plaintiff reported that her energy level was better and the bad dreams had gone away. (Tr. 422). On April 11, 1994, the Plaintiff stated that she was not tolerating the Imipramine well and was feeling more depressed. (Tr. 421). Dr. Piotrowski adjusted her medication several times because the Plaintiff continued to report much agitation and depression. (Tr. 413-421). By July 26, 1994, the Plaintiff was less depressed than she had been in the past but suffered a severe anxiety attack in the morning. (Tr. 413). Dr. Piotrowksi adjusted her medication. (Tr. 413). The Plaintiff continued treatment with Dr. Piotrowski where she reported problems with pain. (Tr. 411). On October 26, 1995, the Plaintiff reported an increase in back discomfort and denied having any memory problems during the week. (Tr. 21). Dr. Piotrowski stated that the Plaintiff's immediate and short term memory seemed to be "okay". (Tr. 402). On November 14, 1995, the Plaintiff was more aware of "memory lapses". (Tr. 401). Although the Plaintiff seemed to be bothered a bit more, she was not ruminating about it and had a positive attitude. (Tr. 401). Dr. Piotrowski discussed with the Plaintiff the connection between the medications and her memory dysfunction. (Tr. 21). On January 8, 1995, the Plaintiff reported experiencing no panic attacks since her last appointment and on March 5, 1996, Dr. Piotrowski noted that the Plaintiff's panic attacks remained under control, and that the Plaintiff continued to control her pain with a positive attitude. (Tr. 21, 399).

On June 20, 1996, the Plaintiff reported to Dr. Piotrowski. (Tr. 534). She complained that her pain problems continued and was upset and distraught. (Tr. 534). On July 8, 1996, Dr. Piotrowski stated that the Plaintiff's mood and anxiety was better. (Tr. 535). Dr. Piotrowksi noted that the Plaintiff's condition was holding despite her situational problems. (Tr. 540). On May 6, 1997, the Plaintiff reported some knee problems but no back problems. (Tr. 540).

On August 8, 1996, a State Agency physician concluded that the Plaintiff's mental impairments imposed slight limitations on the areas of activities of daily living, in social functioning, and that the Plaintiff had often experienced limitations in her ability to concentrate, persist, or pace. (Tr. 24,490).

On January 9, 1997, the State Agency consultant again concluded that the Plaintiff could perform a restricted range of light work. (Tr. 24, 530-533). It was opined that the Plaintiff's mental impairments imposed only slight limitations in activities of daily living, and in concentration, persistence or pace. (Tr. 24, 532). It was further concluded that the Plaintiff had moderate limitations in the area of social functioning. (Tr. 24, 532).

### *Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found that the Plaintiff met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits only through December 31, 1997. (Tr. 28). The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 28). The ALJ found that the Plaintiff's rheumatoid arthritis, tricep tendonitis, and lumbar strain, as well as depression and anxiety, are considered "severe" based on the requirements in the Regulations 20 C.F.R § 404.1520(c). (Tr. 28). However, the ALJ found that these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr.28). The ALJ determined that the Plaintiff's allegations regarding her limitations during the Relevant Period were not credible. (Tr. 28). The ALJ further determined that the Plaintiff had during the Relevant Period the residual functional capacity to perform less than a full range of light work. (Tr. 28). The Plaintiff had the ability to lift twenty (20) pounds occasionally and ten (10) pounds frequently. (Tr. 28). The Plaintiff

was unable to perform a job that involves heights or dangerous machinery, and frequent handling and feeling. (Tr. 28). The ALJ found that Plaintiff cannot perform work that requires extended concentration or attention but she was able to perform simple, repetitive tasks. (Tr. 28). The ALJ found the Plaintiff's past relevant work as a telemarketer did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R § 404.1565). (Tr. 28). Having found that the Plaintiff had the RFC to perform less than a full range of light work and could return to her past relevant work, the Plaintiff was found not to be under a "disability" as defined in the Social Security Act, at any time through the date of the decision. 20 C.F.R. §404.1520(g).

## **THE STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[2]. 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
   *Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
   *Step 2.* Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
   *Step 3.* Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
   *Step 4.* Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
   *Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995)

findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla.

---

```
(per curiam).
```

2005) (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

The Plaintiff argues the ALJ erred as follows: (1) he failed to address the new evidence presented in the form of the Plaintiff's testimony, and erroneously found that the Plaintiff's telemarketing experience was past relevant work; (2) the VE's testimony did not resolve the conflict between the DOT and the original VE's testimony; (3) the VE was not reliable; and (4) the ALJ failed to discuss the VE's new testimony in his decision and therefore, the ALJ did not make a proper finding in fact or law. The Commissioner argues substantial evidence supports the decision of ALJ Ayers.

### *(1) Whether the ALJ Erred by not Finding the Plaintiff did not have Past Relevant Work as a Telemarketer*

The Plaintiff states that her testimony at the hearing constituted new evidence and ALJ Ayers failed to consider it in his decision, and therefore, by taking the new testimony he in essence reopened the case. The Plaintiff notes that an ALJ is required to make specific findings based upon all of the evidence and set forth that evidence in his decision. Therefore, the Plaintiff argues that the ALJ erred by not finding the Plaintiff's former employment as a telemarketer constituted past

relevant work experience. Instead the Plaintiff, contends her work as a telemarketer constituted a composite job or did not meet the minimum requirements as past relevant work because she was unable to work more than six (6) months at a time as a telemarketer. The Defendant claims the Plaintiff's argument is barred by *res judicata* because the district court determined that substantial evidence supported the previous ALJ's determination that the Plaintiff telemarketing experience constituted past relevant work.

In the Social Security context, administrative *res judicata* prevents re-litigation of legal conclusions drawn from previously litigated facts. The doctrine may not be applied unless a barred application constitutes the "same" claim earlier denied on the "same facts." 20 C.F.R. § 404.957(c)(1). Thus, the Secretary of Health and Human Services may not apply *res judicata* if a claimant offers new and material evidence, which is of sufficient weight that it may result in a different determination than was rendered on a prior application.

A case is deemed reopened "if it is reconsidered on the merits to any extent and at any administrative level." Passopulos v. Sullivan, 976 F.2d 642, 645 (11th Cir. 1992( citing Cherry v. Heckler, 760 F.2d 1186, 1189 (11th Cir. 1985)). However, the mere fact that an ALJ holds a hearing to consider whether a claimant's newly-offered evidence adds anything to a prior claim does not conclusively indicate that the Secretary of Health and Human Services (Secretary) has reopened or reconsidered on the merits a first application. Caldarulo v. Heckler, 1984 U.S. Dist. Court LEXIS 24891 * 7 (E.D. Ill 1984). In order to determine whether *res judicata* applies, the Secretary must engage in a threshold review of the new evidence, so that he/she may decide whether a claimant has presented the "same" claim and the "same" facts. This minimal examination of the new evidence will not be deemed a reopening. Id. Thus, if an ALJ simply undertakes a threshold inquiry into whether the Secretary could properly apply *res judicata* to bar a claimant's second application, his so doing

does not reopen the case by legal implication. Id. If, on the other hand, in the course of the ALJ's review, he reconsiders the merits of the old evidence, it may be that the case is reopened. Id.

Contrary to the Plaintiff's assertion, ALJ Ayers did take note of the Plaintiff's testimony in his decision, but found that the previous determinations regarding the facts surrounding the Plaintiff's past relevant work were made by ALJ Dial and ALJ Kogan and supported by the decision of the U. S. District Court. (Tr. 647-648). The ALJ allowed a new hearing to take testimony from the Plaintiff and testimony from the VE to determine if the DOT was in conflict with the VE's prior determination. (Tr. 647). In fact the ALJ specifically noted that it was simply "no reason to relitigate these matters yet, again especially in light if the fact that no one has directed the undersigned to do so." (Tr. 648). Thus, ALJ Ayer declined to re-open or reconsider the previous factual findings related to the Plaintiff's past relevant work as a telemarketer.

Initially, the ALJ noted

> Administrative Law Judge Dail's July 28, 2004, findings of fact with regard to, among other things, the claimant's severe impairments, the inapplicability of the Listings, and the claimant's residual functional capacity, have passed the scrutiny of three different sources– the Appeals Counsel, a United States Magistrate Judge, and a United States District Court Judge. In fact the United States District Court has affirmed the Commissioner's findings with regard to these issues. The file is only back before the undersigned on remand from the Appeals Counsel for 'further proceedings consistent with the order of the court. The undersigned therefore, incorporates by reference the first five (5) findings of fact noted in Administrative Law Judge Dail's previous July 28, 2004, decision, and the corresponding analysis.

(Tr. 648). ALJ Ayers determined that the facts as determined by Judge Dail and the United States District Court were the established facts in this case and they would not be reconsidered. (Tr. 648). After making what he determined to be a careful consideration of the entire record, the ALJ articulated his position on the issue of past relevant work as follows:

> [t]he undersigned notes the first and foremost some of the language of the United States District Court with regard to the claimant's past relevant work. The court noted 'substantial evidence' to find that the claimant had past relevant work as a telemarketer. As with the five findings noted above, the undersigned sees no reason to find otherwise with regard to that issue.

(Tr. 648). As seen in the ALJ's decision, he did not reconsider ALJ Dail's conclusions of law to make his determination on the remand, thus, there was no de facto nor deliberate reopening of the case as suggested by the Plaintiff. While the ALJ did take new testimony from the Plaintiff regarding her telemarketing employment, a threshold review of the new evidence, so that the ALJ may decide whether a claimant has presented the "same" claim and the "same" facts is considered a minimal examination of the new evidence and will not be deemed a reopening. Caldarulo, 1984 U.S. Dist. Court LEXIS 24891 at * 7.

ALJ Ayers specifically stated that while 20 C.F.R. § 404.955 allows an ALJ to revisit the facts and revise the first claim, he would not do so in this case. (Tr. 648). The ALJ noted that the previous ALJ's decision, the Magistrate Judge's decision, and the decision of the District Court all found that substantial evidence supported the determination the Plaintiff's position as a telemarketer constituted past relevant work. In fact, ALJ Ayers clearly noted in his decision that there was a final unfavorable decision issued by ALJ Kogan, and that the second ALJ to hear this case, ALJ Dail, did not reopen the original decision. Therefore, it is respectfully recommended that the issue of whether or not the Plaintiff had past relevant work as a telemarketer is barred by *res judicata*.

### (2) Whether the VE's Testimony Resolved the Conflict Between the DOT and the Prior VE's Determination

The Plaintiff contends the VE failed to resolve the conflict between the DOT's definition that a telemarketer has a reasoning level of 3 or 2 and the fact that the ALJ stated the Plaintiff could

only perform simple repetitive tasks. The Commissioner responds the VE explained that based upon her experience as a VE she disagreed with the reasoning level assigned to the telemarketer in the DOT. The ALJ noted that the VE, Joyce, Ryan, the same VE who offered the original testimony at the 1997 hearing, stated as follows:

> . . . in the vocational rehabilitation field, the work (telemarketing) was considered unskilled in nature. With regard to the reasoning level outlined for telemarketer in the Dictionary of Occupational Titles in comparison to the residual functional capacity for simple, repetitive tasks only, while [the VE] recognized this discrepancy, she also pointed out that many telemarketer jobs, both then and now, are not at a reasoning level of three. The VE indicated that the telemarketer job involved reading a prepared script and arranging appointment times for prospective clients. She indicated that there was very little reasoning involved, and that the sales work was routinely done by the sales staff of these companies at the arranged appointments. At most, [the VE] said the reasoning level of the job was at level two under the DOT definition, and even then she questioned the validity of that in light of the fact that the job was extremely repetitive, rote work.

(Tr. 648).

Under the Eleventh Circuit's decision in Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999), the VE's determination trumps the DOT description of the job. Social Security Ruling 00-04p merely requires the ALJ to inquire of the VE of any differences between the VE's testimony and the DOT and to have the VE explain those discrepancies. Here, the VE stated that the DOT rated the job of telemarketer higher than that actually required. (Tr. 648). The VE based her opinion on her experience as a VE for 30 plus years.

Thus, it is respectfully recommended that the Commissioner complied with the District Court's Order remanding the case for VE to explain why there was a difference between her opinion and the DOT.

### (3) Whether the VE was Reliable

The Plaintiff states the VE's testimony was unreliable because it was not supported by any form of documentation. The Commissioner states the SSR 00-04p does not require documentation but allows the VE to rely on her experience to state why her opinion is in conflict with the DOT's description of a particular job.

The ALJ may rely on the testimony of the VE and that testimony trumps the DOT. Kelley v. Astrue, 2009 WL 2731341 * 6 (M.D. Fla. August 26, 2009). No where in the case law nor in the Social Security Regulations is the VE required to produce documentation to support their opinion and testimony. The ALJ may rely on the VE's testimony, because nothing in SSR-004p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct. Id. (citing Martin v. Commissioner of Social Security, 170 Fed. Appx. 369, 2006 WL 509393 at *405 (6th Cir. 2006)). The case law is clear that the VE's testimony is consider reliable, in and of itself, without the need for supporting documentation. *See* Jones, 190 F.3d at 1228 (holding that the ALJ may rely solely on the testimony of the VE). As a result, it is respectfully recommended the ALJ did not err by relying on the VE's testimony as to why she believed that the telemarketing jobs are basically repetitive and rote work not requiring a reasoning level of three. *See* Kelley, 2009 WL 2731341 * 6 (holding that the reason the ALJ may rely on the VE is because the DOT is not the sole source of admissible information concerning jobs and that by its own wording the SSA itself does not consider the DOT dispositive).

### (4) Whether the ALJ Failed to Discuss the VE's New Testimony in His Decision

The Plaintiff argues the ALJ failed to consider the VE's new testimony. Specifically the Plaintiff contends that based upon the VE's new testimony, the Plaintiff could not return to her past relevant work as a telemarketer and the ALJ failed to discuss that information in his decision. The

Commissioner states the ALJ properly considered the relevant evidence and properly preformed his duty.

The ALJ in his decision takes note that the only issue before the ALJ was the District Court's Order directing him to review the discrepancy between the DOT and the VE's testimony regarding whether or not the Plaintiff could perform her past relevant work. The ALJ then noted that the findings of fact in this case, including the Plaintiff's RFC had passed three different sources the Appeals Counsel, a United States Magistrate Judge, and a United States District Court Judge. (Tr.648). Thus, ALJ Ayer left all of the facts including the RFC determination and the finding that the Plaintiff could return to her past relevant work as a telemarketer. ALJ Ayer clearly stated that the opinion of ALJ Kogan was not changed in light of the testimony offered by the VE at the last hearing in July of 2008.

The Plaintiff argues that the VE stated, that the number of breaks the Plaintiff would have to take during the day would be so disruptive that she could not return to the workplace as a telemarketer. The VE's answers were based on the Plaintiff's Counsels changes in the ALJ's hypothetical during cross examination and questioning of the Plaintiff. (Tr. 888). The Plaintiff's Counsel asked the VE if the Plaintiff had anxiety attacks say three times a month that would last thirty (30) minutes to say ten (10) minutes that would require the Plaintiff's coworkers to stop work and help her how would that effect her ability to work as a telemarketer. (Tr. 888). However, the VE stated that if the breaks were only a few times a month for ten minutes at a time, as described by the Plaintiff's counsel, the Plaintiff could probably still work as a telemarketer if her appointment numbers were meeting the requirements of the job. (Tr. 889). The VE continued that she could not make a determination based upon the Plaintiff's hypothetical because there was no way of knowing if the Plaintiff was setting a sufficient number of appointments. (Tr.889). Thus, the VE did not

testify the Plaintiff could not return to her past relevant work as telemarketer, but stated she could not tell based upon the Counsel's question.

The Plaintiff's Counsel then asked if a person having the same issues, but instead of missing ten minutes the person would miss one third to one half of the day. The VE said that would most likely prevent the individual from performing as a telemarketer. However, the Plaintiff's hypothetical was not based upon the medical evidence as established by Judge Kogen and therefore, it would not meet the Plaintiff's burden under the regulations. The ALJ here specifically stated the hearing was limited to the final unfavorable decision issued by ALJ Kogan, and that the second ALJ to hear this case, ALJ Dail, did not reopen ALJ Kogan's decision. As a result, ALJ Ayers specifically stated that while 20 C.F.R. § 404.955 allows an ALJ to revisit the facts and revise the first claim, he would not do so in this case. (Tr. 648).

### *(5) Whether the Plaintiff's Counsel Should be Paid for the Appeal*

The Plaintiff also moves the Court to extend the time to file for attorney's fees to be extended up to fourteen days and pursuant to 42 U.S.C. § 406(b), to withhold her attorneys fees and cost from any settlement to be paid to the Plaintiff. Since the Court has recommended that the decision of the Commissioner be affirmed the Motion for fees should also be denied.

## CONCLUSION

The Court respectfully recommends that the ALJ did not err nor exclude VE testimony that established the Plaintiff could not return to her past relevant work as a telemarketer. The ALJ clearly considered all of the evidence and properly explained the reasoning and any other difference between the DOT and her opinion testimony during the hearing process. Thus, it is respectfully recommended that the decision of Commissioner should be affirmed

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Fort Myers, Florida, this __10th__ day of November, 2009.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:
Counsel of record, MJCD